**Jason K. Singleton**, State Bar #166170
jason@singletonlawgroup.com
**Richard E. Grabowski**, State Bar #236207
rgrabowski@mckinleyville.net
**SINGLETON LAW GROUP**
**611 "L" Street, Suite A**
**Eureka, CA 95501**
**(707) 441-1177**
**FAX  441-1533**

**Attorneys for Plaintiff, ASIS INTERNET SERVICES**
**and JOEL HOUSEHOLTER**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASIS INTERNET SERVICES, a California corporation, and JOEL HOUSEHOLTER, dba KNEELAND ENGINEERING, dba FOGGY.NET <br><br> Plaintiffs, <br><br> vs. <br><br> ACTIVE RESPONSE GROUP, INC., a Delaware corporation, et al. <br><br> Defendants. | Case No. C-07-6211 TEH <br><br> **PLAINTIFFS SUPPLEMENTAL BRIEFING RE PROTECTIVE ORDER** |

This briefing is in response to the Court's Order of April 28, 2008.  The Court requested supplemental briefing on the following:

1.     <u>The precise disclosures Plaintiffs seek to have protected.</u>

Plaintiffs are internet access providers, providing internet bandwidth and email services to consumer end users.  Defendant is an internet marketer, that hires hundreds or thousands of contractors to send bulk commercial emails. Now, Plaintiffs' Complaint alleges that Defendant is directly or indirectly responsible for sending thousands of "spam" email messages to Plaintiffs' servers.  Plaintiffs have those email messages on a "CD" disk for production to Defendant.  However, these emails, within the "header" of the email, and within the "sent to" field, have the email addresses of Plaintiffs' clients; administrative email addresses used for internal maintenance and configuring of computer servers, and the email addresses of former clients of Plaintiffs.  These are the addresses to which the spam was sent.

1  Plaintiffs seek to protect the live, inactive, and administrative email addresses from
2  public disclosure.  Plaintiffs seek to have the *email addresses* designated "Attorney Eyes Only"
3  under the proposed protective order.  This would still allow Defendant's expert access to the
4  information.

5  To be clear, Plaintiffs do not seek protective designation of the "spam" emails at issue in
6  this litigation.  Only the email addresses of Plaintiffs' customers and administrative addresses
7  found therein.  In an effort to move matters along, Plaintiffs took the spam emails at issue in
8  this litigation, and using custom software, redacted from the subject spam emails the email
9  addresses to which Plaintiffs seek AEO designation.  This redacted version of the subject
10 spam emails was provided to Defendant.  Plaintiffs will of course produce the unredacted
11 version of the subject spam emails once the within issue is resolved.

12 2.  <u>What portions of the proposed Protective Order are in dispute.</u>

13 The proposed protective order that Plaintiffs provided Defendant is attached hereto as
14 Exhibit "A."  Defendant has never suggested any changes, deletions or additions whatsoever.
15 Nor has Defendant provided a proposed protective order of its own.  It appears that Defendant
16 is not opposed to the content of the protective order itself, but rather once it is effected, that
17 Plaintiffs will make designations thereunder.

18 3.  <u>Whether Defendant consents to any degree of protection for the disclosure at issue.</u>

19 Defendant apparently would consent to designation of the email addresses on which
20 Plaintiffs seek protection as "confidential" under the proposed protective order.  This would
21 allow Defendant's counsel to disclose the email addresses to Defendant's employees.  For all
22 of the reasons set forth in Plaintiffs' Brief of April 21, 2008, (Docket 21), Plaintiffs submit such
23 designation is insufficient to protect Plaintiffs and Plaintiffs' clients.

24 4.  <u>Responses to the arguments raised by Defendant's Letter Brief.</u>

25 Defendant's brief states, "*ARG does <u>not</u> send commercial emails to anyone.*"  Rather,
26 "*third parties accomplish this goal.*"  Defendant's letter brief, P.1 (Docket 22).  Clearly then, it
27 is not Defendant ARG that has the email address lists to which its advertisements were
28 marketed, but rather Defendant ARG's contractors.  Consequently, the following statement by

1    ARG simply does not make sense:

2            "*On the rare occasion when ARG learns unwanted email has been*

3        *received, ARG actively seeks to learn the identity of any third party who*

4        *has allegedly sent email containing content relating to ARG, without its*

        *authorization. To do so, ARG examines the email address to which such*

5        *emails were allegedly sent.*" Defendants Letter Brief, P1 (Docket 22).

6            ARG has simply not explained how it can determine the sender of the unlawful email, by

7    reference to the address to which it the email was sent, when ARG does not send commercial

8    emails itself. ARG does not have the mailing list. The only method for that to occur is if ARG

9    provides the entire email address list of Plaintiffs' clients, to each and every one of ARG's bulk

10   commercial emailers, (hundreds or thousands of them) and then ask them if they marketed to

11   those addresses. That scenario is exactly what Plaintiffs seek to prevent. The potential loss to

12   Plaintiffs of having their administrative and client addresses distributed to thousands of bulk

13   emailers is serious.

14           The email address lists owned by ARG's bulk emailer contractors has value, and is

15   proprietary. The contractors are not going to give their list to ARG.

16           Whether Plaintiffs' administrative and clients email addresses are designated

17   "confidential" or "attorney eyes only," in either event, Defendant is not going to be able to

18   provide that email address list to its bulk email contractors. Consequently, ARG is not

19   revealing the true reason it wishes for public disclosure of the email addresses, or even, for

20   that matter, for designation as "confidential." Until Defendant ARG can explain logically, and

21   technically, why it opposes "AEO" designation, Plaintiffs submit protection of the data is

22   paramount. It is clear from looking at anyone's email inbox that internet marketing is the "wild

23   wild west." Plaintiffs submit even disclosing the email addresses to ARG's employees poses

24   an unacceptable risk, where Defendant cannot, and has not, logically explained why it needs

25   to do so. Keep in mind, Plaintiffs have thousands of spam emails advertising Defendant's web

26   sites. Defendant, from Plaintiffs perspective, clearly have an internal problem. Because of

27   that problem, Plaintiffs do not wish to trust ARG employees with its sensitive data.

28           Defendant's Letter Brief of April 21 (Docket 22) also states on page 2, third paragraph,

last sentence, "..*to assert a variety of legal defenses in this action, it is necessary and vital for ARG to review the addresses to which the emails were allegedly sent*."  Such variety of defenses appear nowhere in Defendant's Answer to the Complaint.  Defendant alleges four defenses, Failure to state a claim, Acts of third parties, Failure to mitigate damages, and Preemption.  Defendant has not explained, nor can Plaintiff fathom, how the email addresses to which the spam was sent might be relevant to any of these "defenses."   Indeed, such "defenses" are inapplicable as a matter of law to the statutory penalties imposed by the CAN SPAM Act.

As noted in Plaintiffs' opening points and authorities, Defendant is waiting to produce documents relevant to this action until such time as a protective order is in place.  There is no dispute a protective order is necessary.  Indeed, there is very likely to be additional data sought by Defendant and Defendant's expert which requires designation under the protective order, and similarly, additional materials and even deposition testimony which should be so designated.   Consequently, Plaintiffs request the Court effect the proposed protective order submitted herewith.

Finally, Plaintiffs would leave the Court with this final thought.  Virtually every internet access provider purchases spam filtering from one of the commercial suppliers such as "Postini" or "Barracuda."  These services are extremely sophisticated, sampling spam in real time, and adjusting the spam filters, which are then updated to the Internet Access Provider clients *several times an hour*.  Now, if any bulk commercial emailer complied with the CAN SPAM Act and sent their legal spam emails, millions of them, from known I.P. addresses, with real and unforged header information and "sent from" information, the commercial spam filters would be configured within hours to block such emails.  The only reliable way to get spam past the spam filters is to violate the CAN SPAM Act in one or another respect.

**SINGLETON LAW GROUP**

Dated:       May ___, 2008           /s/ Jason K. Singleton_____
                                     Jason K. Singleton, Attorneys for Plaintiffs
                                     **ASIS INTERNET SERVICES AND JOEL**
                                     **HOUSEHOLTER, dba FOGGY.NET**