THOMAS R. BURKE (CA State Bar No. 141930)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
Email: thomasburke@dwt.com

AMBIKA K. DORAN (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
Telephone: (206) 757-8030
Facsimile: (206) 757-7030
Email: ambikadoran@dwt.com

Attorneys for Defendant ACTIVE RESPONSE GROUP, INC.

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ASIS INTERNET SERVICES, a California corporation, and JOEL HOUSEHOLTER, d/b/a KNEELAND ENGINEERING, d/b/a FOGGY.NET,<br><br>Plaintiffs,<br><br>v.<br><br>ACTIVE RESPONSE GROUP, INC. et al.<br><br>Defendants. | Case No. CV 07-6211 TEH<br><br>DEFENDANT ACTIVE RESPONSE GROUP, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1) OR FED. R. CIV. P. 12(B)(6)<br><br>Date: July 21, 2008<br>Time: 10 a.m.<br>Place: Courtroom 12, 19th Floor |

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. REPLY ..... 1

A. Plaintiffs' Proposed Amended Complaint Would Be Futile, Because It Does Not Allege the Emails At Issue Caused Plaintiffs Harm. ..... 1

1. Amendment is Futile Where the Amendment Does Not Cure the Legal Deficiencies In Plaintiffs' Original Complaint. ..... 1

2. Plaintiffs Admit That, Even With Amendment, Their Claims Fail To Establish "Adverse Effect" Under Existing Law. ..... 2

3. The Courts That Have Addressed This Legal Issue Set a High Standard Plaintiffs Cannot Satisfy. ..... 3

a. The Test Announced By These Courts Does Not Eliminate the CAN-SPAM Private Cause of Action. ..... 3

b. Plaintiffs' Proposed Alternate Tests Are Misplaced And Would Effectively Excise the "Adverse Effect" Requirement. ..... 4

c. Plaintiffs' Effort to Distinguish Gordon and Optin Global Falls Flat. ..... 6

4. Plaintiffs' First Amended Complaint Fails to Allege Plaintiffs Were Acting as Internet Access Providers For the Inactive Email Accounts At Issue. ..... 8

B. If This Court Grants Plaintiffs' Request To Amend Their Complaint, It Should Dismiss That Complaint Because It Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims, And Because the Complaint Fails To State a Claim Upon Which Relief Can Be Granted. ..... 9

C. If This Court Dismisses Plaintiffs' Federal Claim, It Should Also Dismiss Plaintiffs' State-Law Claim. ..... 9

III. CONCLUSION ..... 9

DAVIS WRIGHT TREMAINE LLP

## TABLE OF AUTHORITIES

Page(s)

### FEDERAL CASES

AsIs Internet Servs. v. Optin Global, Inc., 2008 WL 1902217 (N.D. Cal. Apr. 29, 2008) .......... passim

Brosnan v. Alki Mortg., LLC, 2008 WL 413732 (N.D. Cal. Feb. 13, 2008) .......... 3, 4, 5, 8

Gordon v. Virtumundo, Inc., 2007 WL 1459395 (W.D. Wash. May 15, 2007) .......... passim

Hypertouch Inc. v. Kennedy-Western Univ., 2006 WL 648688 (N.D. Cal. March 8, 2006) .......... 3, 4, 8

Roth v. Marquez, 942 F.2d 617 (9th Cir. 1991) .......... 3

Sweaney v. Ada County, Idaho, 119 F.3d 1385 (9th Cir. 1997) .......... 2

United States v. Smithkline Beecham Clinical Labs., 245 F.3d 1048 (9th Cir. 2001) .......... 2

### FEDERAL STATUTES

15 U.S.C. § 7706 .......... 7

### RULES

Fed. R. Civ. P. 12 .......... 9

### OTHER AUTHORITIES

"FTC Staff Report: Spam Summit: The Next Generation of Threats and Solutions" (November 2007) .......... 8

S. REP. 108-102, 2004 U.S.C.C.A.N. 2348 (July 16, 2003) .......... 6

# I. INTRODUCTION

In response to Defendant Active Response Group, Inc.'s ("ARG") Motion to Dismiss, Plaintiffs AsIs Internet Services ("AsIs") and Joel Householter ("Foggy") "concede the Complaint does not set forth any allegation of adverse effect" which is required for them to have standing to sue under the CAN-SPAM Act of 2003, 15 U.S.C. § 7706(g)(1), and for this Court to have jurisdiction over this matter. *See* Opposition ("Opp.") at 1. Instead, Plaintiffs seek leave to amend and proffer an amended complaint that suffers the same legal defects. Permitting Plaintiffs to file the complaint would be futile because the Act does not convey standing over private party plaintiffs who cannot demonstrate harm *caused by defendants' spam*. Plaintiffs' amended complaint fails this requirement, and Plaintiffs do not dispute that the courts that have decided this legal question have concluded Plaintiffs would not have standing. Consequently, the Court should grant ARG's Motion to Dismiss without allowing Plaintiffs leave to amend.

ARG and Plaintiffs are mutually interested in quickly resolving this threshold, purely legal question. While the Court considers this matter, ARG respectfully requests that the Court stay all discovery and adjust the case management schedule as appropriate to avoid the waste of private and judicial resources.

# II. REPLY

## A. Plaintiffs' Proposed Amended Complaint Would Be Futile, Because It Does Not Allege the Emails At Issue Caused Plaintiffs Harm.

### 1. Amendment is Futile Where the Amendment Does Not Cure the Legal Deficiencies In Plaintiffs' Original Complaint.

This Court should deny Plaintiffs' request to amend the Complaint because such amendment would be futile. "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." United States v. Smithkline Beecham Clinical Labs., 245 F.3d 1048, 1053 (9th Cir. 2001). A proposed amendment is futile if the amendment presents no set of facts that would constitute a sufficient claim. Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1393 (9th Cir. 1997). Consequently, courts will deny leave to amend for "futility" where a summary judgment motion will inevitably defeat the claims. *See* Roth v. Marquez, 942 F.2d 617, 628 (9th Cir. 1991). Because the allegations Plaintiffs seek to add by the First Amended

Complaint will not cure its standing deficiencies, this Court should deny Plaintiffs' request to amend and instead, dismiss the claims against ARG with prejudice.

**2. Plaintiffs Admit That, Even With Amendment, Their Claims Fail To Establish "Adverse Effect" Under Existing Law.**

Plaintiffs bemoan, without relevance, the costs of spam to society, *see* Opp. at 1-2, but do not dispute that courts would find they lack standing to bring a claim under the CAN-SPAM Act of 2003, because they have not suffered harm. CAN-SPAM creates a *limited* right for interactive access service ("IAS") providers who are "adversely affected" by another's sending of spam. 15 U.S.C. § 7706(g). See Brosnan v. Alki Mortg., LLC, 2008 WL 413732, at *2-*3 (N.D. Cal. Feb. 13, 2008) (court found *sua sponte* it lacked subject-matter jurisdiction to hear claims where plaintiff could not demonstrate injury from emails at issue); AsIs Internet Servs. v. Optin Global, Inc., 2008 WL 1902217, at *17 (N.D. Cal. Apr. 29, 2008) (plaintiff AsIs did not have standing to bring CAN-SPAM claim where subject emails caused it no harm); Gordon v. Virtumundo, Inc., 2007 WL 1459395, at *8 (W.D. Wash. May 15, 2007) (IAS provider had not alleged requisite injuries from emails, such as limited internet connectivity, compromised network integrity, or higher overhead costs and staffing); Hypertouch Inc. v. Kennedy-Western Univ., 2006 WL 648688, at *4 (N.D. Cal. March 8, 2006) (requisite injury found where plaintiff alleged emails caused decrease server response and crashes, led to higher bandwidth utilization, and forced expensive hardware and software upgrades). Plaintiffs only dispute two of these cases, Gordon and Optin Global, do not mention Brosnan, and make only passing reference to Hypertouch. *See* Opp. at 3, 8.

Plaintiffs' new factual allegations state only *generalized* harms associated with the alleged influx of spam, not harms specific to the emails at issue. *See* Opp. at 7-8, First Amend. Compl. ¶¶ 26-27. For example, Plaintiffs allege AsIs spends $3,000 per month in spam filtering costs, but do not provide an estimate for how much of those costs, *if any*, are attributable to ARG's activities. *Id.* Similarly, Plaintiffs allege that Foggy purchased spam filtering software. *Id.* And, Plaintiffs admit that they have *not* suffered the one harm some courts would find sufficient for adverse effect—server or network crashes. *See* Optin Global, 2008 WL 1902217, at *17.

DAVIS WRIGHT TREMAINE LLP

Plaintiffs admit that under Gordon and Optin Global, these injuries are insufficient to give rise to standing. *See* Opp. at 3. Tellingly, Plaintiffs fail to even mention, let alone distinguish, Brosnan, in which the court raised the issue *sua sponte,* stating "[t]he plaintiff must specifically state the adverse effects that the ISP suffered *from Defendant's alleged spam.*" Brosnan, 2008 WL 413732, at *3 (emphasis added). Under these authorities, Plaintiffs' amendment to state adverse effects they have suffered from spam *generally* are insufficient to convey standing to bring a CAN-SPAM claim. As ARG explained in its opening memorandum at 4-6, Plaintiffs must truthfully allege the emails ARG allegedly sent to their "inactive" and "unassigned" email accounts caused them harm, and they have failed to do so.

**3. The Courts That Have Addressed This Legal Issue Set a High Standard Plaintiffs Cannot Satisfy.**

**a. The Test Announced By These Courts Does Not Eliminate the CAN-SPAM Private Cause of Action.**

Plaintiffs' core argument stems from an unsupported assertion that no IAS provider could show the loss required by the test in Optin Global and Gordon. *See* Opp. at 3, 10, 13. Above all, the Court should bear in mind that Congress delegated enforcement of the CAN-SPAM statute primarily to the Federal Trade Commission and other government agencies. *See generally* 15 U.S.C. § 7706. Even if Plaintiffs' theory is true, it would bear little significance, since Congress never intended IAS providers to be the primary enforcers of the statute.

Moreover, ARG does not contend, as Plaintiffs suggest, that Plaintiffs must have suffered a network crash to establish standing, *see* Opp. at 13, but rather that Plaintiffs must allege the emails at issue caused the type of harm contemplated by the CAN-SPAM Act, as explained by the case law and evidenced by the statute's legislative history. As the Brosnan court explained:

> *The plaintiff must specifically state the adverse effects that the ISP suffered from Defendant's alleged spam.* Hypertouch at *4; Gordon at *4. Brosnan… fails to state the actual harms suffered by his company as a result of the alleged spam sent by Defendant. *These harms, as noted, are essential to establishing standing. These actual damages must be established before the plaintiff is permitted to seek statutory damages.* 15 U.S.C.A. § 7706(g)(1); Gordon at *7; Hypertouch at *4. According to the Act and Gordon, the plaintiff must have suffered actual adverse effects as a result of Defendant's actions, not merely pray for monetary damages to be established at some later point, let alone to proceed and recover statutory

damages in the alternative. Id.; Gordon at *7.

2008 WL 413732, at *3-*4 (emphasis added). Thus, even if Plaintiffs could allege some significant effect, monetary or technological, from the emails at issue, they would have standing under this authority. Plaintiffs have failed to do so and instead, merely allege, without support, that no IAS provider could show these harms. *See, e.g.,* Opp. at 3.

Plaintiffs' arguments that IAS providers have eliminated the effects of spam on consumers contradict their theory of standing. Congress did not intend to create a private claim in cases where an IAS provider could have eliminated the adverse effects of spam just by using better technology. *See* Opp. at 10. As the Gordon court recognized, the availability of increasingly sophisticated filtering technology reduces, not increases, the adverse effect an IAS provider suffers. 2007 WL 1459395 at *7. If the harm Congress sought to remedy ceases to exist, the cause of action is no longer viable, and no court should substitute its own judgment for that of Congress to determine any additional harms the statute should remedy.

**b. Plaintiffs' Proposed Alternate Tests Are Misplaced And Would Effectively Excise the "Adverse Effect" Requirement.**

Not doubt realizing they cannot satisfy the emerging legal tests adopted by the courts, Plaintiffs propose two alternate standing tests, neither of which comports with the CAN-SPAM Act, prior case law, or Congressional intent. First, Plaintiffs assert that so long as spam was "transmitted over the facilities" of an IAS provider, the provider has suffered the requisite adverse effect. *See* Opp. at 5. Plaintiffs derive this test from the CAN-SPAM provision governing the calculation of statutory damages, which is based on the number of messages sent "over the facilities of the provider of Internet access service." *Id.*; *see also* 15 U.S.C. § 7706(g)(3)(A). Under this theory, Plaintiffs posit, "there is no dispute that some harm has occurred." *Id.* These harms, Plaintiffs suggest, are (1) AsIs and Foggy "had to carry the emails over its [sic] servers," (2) AsIs and Foggy have expended money over time to "prevent spamming" by "filter[ing], process[ing] and stor[ing] the emails," and (3) AsIs and Foggy "conducted investigations specific to these emails." *See* Opp. at 5.

Plaintiffs' derivation of this test from the damages provision of the CAN-SPAM Act is

telling. The damages provision is relevant *only* where an IAS provider "adversely affected by a violation" of the statute brings suit. 15 U.S.C. § 7706(g). To read the damages provision as interpreting "adverse[] effect," as Plaintiffs do, is illogical, and finds no support in the case law or the statute's legislative history. As to Plaintiffs' allegations of "harm," they are hardly the type suggested by the courts thus far, and with good reason. If an IAS provider needed only show these three elements, *any* IAS provider could file a lawsuit by demonstrating they had at some point spent money on spam prevention, and isolated spam emails to prepare for litigation, precisely the opposite of the limited private right of action that Congress created.

In enumerating the harms, the Senate Report stated:

> Spam imposes *significant economic burdens* on ISPs, consumers, and businesses. Left unchecked at its present rate of increase, spam may soon undermine the usefulness and efficiency of e-mail as a communications tool. *Massive volumes of spam can clog a computer network*, slowing Internet service for those who share that network. *ISPs must respond to rising volumes of spam by investing in new equipment to increase capacity and customer service personnel to deal with increased subscriber complaints.*

S. REP. 108-102, 2004 U.S.C.C.A.N. 2348, 2352-53 (July 16, 2003) (emphasis added). Congress did not intend an IAS provider to be able to bring a lawsuit against a single entity when that entity's emails alone would not trigger these costs.

Plaintiffs' second proposed test is even broader. *See* Opp. at 5-6. Plaintiffs suggest that "even this level of harm is not necessary" and a claim "can be created by Congress by creating a right and the invasion of that right." *Id.* at 5. Thus, Congress created the right "for IAPs not to be spammed and empowered IAPs to enforce that right. Invasion of that right therefore creates standing." *Id.* at 6. Under this test, an IAS provider would not even need to show that it incurred *any* expense in preventing spam, or processing the spam it did receive, in direct contravention of the statutory language that an IAS provider "adversely affected" by a violation can bring suit. *See* 15 U.S.C. § 7706(g)(1). Plaintiffs contend any provider could, upon receiving a single spam message, file a lawsuit. Again the Act, its legislative history and case law confirm that Congress never intended such a result. The alternative tests proffered by Plaintiffs – not those currently used by courts – would thwart Congress's "chosen instrument" to deal with spam. *See* Opp. at 6



DAVIS WRIGHT TREMAINE LLP

(citing Christiansburg Garment Co. v. Equal Employment Opp. Comm'n, 434 U.S. 412 (1978)).

In proffering these tests, Plaintiffs mistakenly contend that "[t]he question before the Court is if that harm is sufficient to meet the requirements of Article III standing." *See* Opp. at 5. ARG does not contend, however, that Plaintiffs lack standing under *Article III of the Constitution.* Rather, ARG argues only that Plaintiffs lack standing under the CAN-SPAM Act, the legal basis for Plaintiffs' claims. Thus, the Article III cases Plaintiffs cite are wholly irrelevant. *See* Opp. at 4 (citing Massachusetts v. EPA, 127 S. Ct. 1438 (2007)); 6 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)). Even if these decisions stand for the principles cited in this context, they do not support Plaintiffs' CAN-SPAM Act claims. That is, ARG admits Congress has the "power to define injuries… where none existed before," and that an Article III injury "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *See* Opp. at 5, 6. Rather, ARG argues that Plaintiffs lack the requisite legal standing to enforce the limited private remedy provided by CAN-SPAM.

**c. Plaintiffs' Effort To Distinguish Gordon And Optin Global Falls Flat.**

Plaintiffs mistakenly ascribe some meaning to the fact that the legislative history the Gordon and Optin Global courts cited derived from a section entitled "Costs to ISPs, Consumers, and Businesses," rather than "Section 7. Enforcement by the Federal Trade Commission." *See* Opp. at 9. In determining the harm Congress sought to remedy, it would appear the former section, cited above, would be more relevant. Section 7 merely recites the statute's causes of action, nearly verbatim, and if anything, its inclusion of the private right under the heading "Enforcement by the Federal Trade Commission," only supports ARG's and courts' interpretation of the private right as limited.

Likewise, Plaintiffs' assertion that the Senate Report "represents the state of technology… in 2003… not… today," *see* Opp. at 9, is immaterial. If the harms Congress sought to remedy have disappeared, the private right of action is unnecessary, so it becomes only natural that fewer plaintiffs have standing. Similarly, Plaintiffs' citation to current spam studies, *id.*, only shows that spam filters are largely working, and the Federal Trade Commission—tasked with enforcing

the statute—has turned its attention to spam used to commit cybercrime, such as phishing.[1] *See* "FTC Staff Report: Spam Summit: The Next Generation of Threats and Solutions," at 2-3 (November 2007) (describing the utility of spam filters and the criminal motives new-age spammers); *see also* Declaration of Jason K. Singleton, ¶ 3, Ex. B. Strikingly, Plaintiffs do not allege ARG has engaged in phishing or any type of behavior the FTC sees as a threat. Just because Plaintiffs and other IAS providers have ceased experiencing server crashes does not mean Congress must have intended the harm to be something different. And just because IAS providers can now run their business so that spam does not reach their customers, *see* Opp. at 12-13—the harm Congress feared—does not mean the type of harm has changed. Rather, these suggest, if anything, that the private right of action may be outdated. In any event, there can be no question that Plaintiffs' amended complaint does not satisfy the standing requirements to bring a private action.

Plaintiffs' attempts to distinguish themselves from the plaintiffs in Gordon, *see* Opp. at 10-11, even assuming they are true, are irrelevant, since the Optin Global court found the analysis equally applicable to Plaintiff AsIs, and the Brosnan and Hypertouch courts adopted similar tests. Some of Plaintiffs' facts lead to no logical distinction whatsoever. For example, Plaintiffs note that the Gordon plaintiff had no paying customers, but allege here that the emails were sent to "inactive" or "unassigned" accounts, for which there also were presumably no paying customers.

Plaintiffs' attempts to distinguish Optin Global, *see* Opp. at 12-13, are equally unavailing. The Optin Global court did not, as Plaintiffs suggest, define significant harm as Plaintiffs quoted. *See* Opp. at 12, quoting 2008 WL 1902217 at *17. Rather, the court there merely characterized the potential harms AsIs had allegedly suffered, and stated there was no genuine issue of material of fact showing that AsIs had actually suffered those harms.

[1] Phishing is "a form of online identity theft that uses deceptive spam to trick consumers into divulging sensitive or personal information, including credit card numbers and other financial data." "FTC Staff Report: Spam Summit: The Next Generation of Threats and Solutions," at 5-6 (November 2007).

**4. Plaintiffs' First Amended Complaint Fails To Allege Plaintiffs Were Acting As Internet Access Providers For the Inactive Email Accounts At Issue.**

Plaintiffs have added two conclusory allegations in their proposed First Amended Complaint regarding their status as IAS providers. *See* First Amend. Compl. ¶¶ 11 ("ASIS received the emails at issue while performing services as an internet access provider and email service for its customers"), 12 (same allegation for Foggy). Plaintiffs do not dispute, however, that they must allege more then mere conclusory allegations in order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Yet Plaintiffs cite irrelevant information as to the alleged *effect* of spam on their administrative and unassigned accounts, rather than explain why they are IAS providers, within the meaning of the statute. Specifically, Plaintiffs do not allege they administer the accounts in question, that anyone actually received the emails at issue, or that they were providing internet services to the account holders when the emails at issue arrived at the allegedly affected email accounts.

Plaintiffs' theories on this point appear largely irrelevant. They assert that when a spammer sends email to a closed account, Plaintiffs still use resources, *see* Opp. at 14, which assumes that Plaintiffs are IAS providers for purposes of this lawsuit.[2] Yet Plaintiffs essentially admit to being a spam litigation mill. *Id.* at 16. Plaintiffs "collect the spam sent to their inactive accounts," *id.* at 15—they do not bring lawsuits based on spam their customers have actually received, but appear to allege an indirect harm of having to identify the spam and alter its filters.[3] Although they assert these customers "likely" received the same emails, *see* Opp. at 15, Plaintiffs present no factual basis for this contention, stating only that just because the emails were sent to inactive and administrative accounts, "that does not mean that spam emails… were not sent to Plaintiffs' active clients as well." *Id.* Plaintiffs also state that there "simply must be a method for collecting and sorting such spam." *See* Opp. at 15. ARG does not disagree, but the emails at

[2] Plaintiffs' factual assertions are in conflict. Plaintiffs state that when their servers receive email, they still have to ascertain whether such an address exists and "bounce" the message. *See* Opp. at 14. Aside from not explaining what it means to "bounce" an email, Plaintiffs in the next two paragraphs explain that they do not in fact "bounce" any emails.

[3] This type of indirect harm was rejected for standing purposes in Optin Global. 2008 WL 1902217 at *4.



DAVIS WRIGHT TREMAINE LLP

issue must have been received at email accounts to which Plaintiffs were providing a service. Plaintiffs have not alleged this, nor any facts supporting it.

Plaintiffs also mistakenly assert that there is no legal significance to the fact that they are in the "spam lawsuit business," and that ARG seeks to put the onus of spam on Plaintiffs. Being in the spam litigation business, however, is important insofar as it suggests Plaintiffs collect spam for the express purpose of filing lawsuits—not as a byproduct of their internet business. As Asis has filed nine nearly identical complaints in the past three years, Plaintiffs' admission serves to confirm that Plaintiffs were neither acting as IAS providers in collecting the spam, nor adversely affected by receiving it. For this reason, Plaintiffs independently lack standing to bring their CAN-SPAM claim.

**B. If This Court Grants Plaintiffs' Request To Amend Their Complaint, It Should Dismiss That Complaint Because It Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims, And Because the Complaint Fails To State a Claim Upon Which Relief Can Be Granted.**

Even if this Court grants Plaintiffs' request to amend their complaint, it should dismiss the First Amended Complaint for lack of subject-matter jurisdiction or alternatively, failure to state a claim upon which relief can be granted. Plaintiffs do not dispute that if they lack standing, this Court lacks subject-matter jurisdiction over this action. Plaintiffs also do not dispute that this Court must dismiss their claims if they fail to allege enough facts to state a plausible claim. For the reasons already set forth, the Court should dismiss Plaintiffs' First Amended Complaint if it allows it to be filed.

**C. If This Court Dismisses Plaintiffs' Federal Claim, It Should Also Dismiss Plaintiffs' State-Law Claim.**

Plaintiffs also do not dispute that if this Court dismisses their CAN-SPAM claim, it should decline to exercise supplemental jurisdiction over their state-law claim. Thus, if the Court dismisses the federal claim – as it should – it will have dismissed all claims over which it had original jurisdiction and should simultaneously dismiss Plaintiffs' state-law claims as well.

## III. CONCLUSION

Congress intended IAS providers to have only a *limited* right to sue under the CAN-SPAM Act, leaving enforcement largely to the government. It did not intend an IAS provider to

collect spam for the purposes of engaging in litigation based on alleged spam received in "inactive" and "unassigned" accounts that caused Plaintiffs no measurable harm. For the foregoing reasons, ARG respectfully requests this Court dismiss Plaintiffs' Complaint with prejudice.

DATED: July 7, 2008

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: */s/ Thomas R. Burke*
THOMAS R. BURKE
AMBIKA K. DORAN (admitted *pro hac vice*)
Attorneys for Defendant ACTIVE RESPONSE GROUP, INC.