THOMAS R. BURKE (CA State Bar No. 141930)
RONALD LONDON (admitted *pro hac vice*)
AMBIKA K. DORAN (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111
Telephone:     (415) 276-6500
Facsimile:      (415) 276-6599
Email:           thomasburke@dwt.com, ronaldlondon@dwt.com, ambikadoran@dwt.com

Attorneys for Defendant ACTIVE RESPONSE GROUP, INC.

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ASIS INTERNET SERVICES, a California corporation, and JOEL HOUSEHOLTER, d/b/a KNEELAND ENGINEERING, d/b/a FOGGY.NET,<br><br>Plaintiffs,<br><br>v.<br><br>ACTIVE RESPONSE GROUP, INC. et al.<br><br>Defendants. | Case No. CV 07-6211 TEH<br><br>DEFENDANT ACTIVE RESPONSE GROUP, INC.'S MOTION FOR CERTIFICATION UNDER 28 U.S.C. § 1292(B), A STAY IN THE PROCEEDINGS, OR A SECURITY<br><br>Date: September 22, 2008<br>Time: 10 a.m.<br>Place: Courtroom 12, 19th Floor |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on September 22, 2008, at 10 a.m., or as soon thereafter as the matter may be heard in Courtroom Twelve of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Active Response Group, Inc. ("ARG") will and hereby does move this Court for an order certifying its July 30, 2008 Order denying ARG's Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) to the Ninth Circuit and staying the proceedings, an order staying the proceedings pending a decision by the Ninth Circuit in two other cases, or an order finding Plaintiffs must post a security.

ARG makes this motion on the grounds that an immediate appeal of the denial of ARG's motion to dismiss presents a controlling issue of law on which there is substantial ground for difference of opinion, and which may materially advance the termination of the litigation.

Page 1

Specifically, the Court, in denying ARG's motion, created a split of authority in the Northern District of California, and in other district courts within the Ninth Circuit Court of Appeals on the question of what constitutes "adverse effect" under the CAN-SPAM Act of 2003. Denial of the motion opened the door to what likely will be protracted and expensive discovery and ensuing dispositive motions that, if this case ultimately is resolved on grounds that a motion to dismiss for lack of standing should have been granted, will constitute a waste of judicial resources and the parties' time and money. If the Court declines to certify the Order, it should stay the proceedings pending a decision in two cases before the Ninth Circuit on the meaning of "adverse effect." Alternatively, it should require Plaintiffs to post a security for its costs and fees in the likely event the Court dismisses the claims or the Ninth Circuit later reverses the decision.

This Motion rests on the concurrently filed Memorandum of Points and Authorities, related pleadings and attachments in this action, the pleadings and records on file, such further papers as the parties may file in connection with this Motion, and such further argument and evidence as the parties may present in connection with the hearing on this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

The CAN-SPAM Act of 2003 provides for a limited private right of action for internet access service ("IAS") providers to sue if they have been "adversely affected" by a violation of the Act. *See* 15 U.S.C. § 7706(g)(1). Plaintiffs' First Amended Complaint alleges damages arising from spam generally, but no damage arising from receipt of the emails at issue, or even receipt of emails that are necessarily unlawful. This Court, in denying Defendant Active Response Group, Inc.'s motion to dismiss for failure to adequately allege adverse effect, disagreed with the findings of three other courts—two sitting in *this* District and another in the Ninth Circuit—that the statute requires a private plaintiff to allege the emails at issue actually and significantly caused it harm. In one case, a sister court found Plaintiff AsIs Internet Services ("AsIs") lacked standing, a decision AsIs has appealed to the Ninth Circuit. Against this precedent, this Court adopted a new test that would require a plaintiff to show only that it has generally suffered harm from spam, and it carried allegedly unlawful email(s) over its servers, and found Plaintiffs satisfied this test. Significantly, the Court's test requires only that Plaintiff suffered generalized adverse effects from spam—including both *lawful* and assertedly unlawful unsolicited commercial email—and that, regardless of whether the emails had no impact or negligible impact on Plaintiffs, it carried emails alleged to be unlawful under the CAN-SPAM Act.[1] The Court should certify its order, which involves a controlling question of law, upon which substantial ground for difference of opinion exists, and which may materially advance the ultimate termination of this litigation and multiple identical lawsuits Plaintiffs have filed within the District, to the Ninth Circuit Court of Appeals under 28 U.S.C. § 1292(b).

---

[1] In this regard, in finding Plaintiffs had standing, the Court held they "adequately allege … they suffered ISP-specific harm because they incurred spam-related expenses for filtering systems, expanded server and network capacity, and personnel time" in that AsIs "spends significant employee time dealing with spam, including approximately $3,000 per month in spam filtering costs and employee time; has been forced to expand its server and network capacity because of spam; and has experienced network slow downs because of spam." Dkt. 48 at 8-9. Significantly, these are all "harms" Plaintiffs would incur even if they never received *any* unlawful spam but merely had to manage unsolicited commercial emails–which may be lawfully sent under CAN-SPAM provided they are not misleading and there has been no opt-out request–as part and parcel of being an ISP.

Page 2

Defendant's Motion For Certification Under 28 U.S.C. § 1292(b), a Stay, Or a Security

264782.1

Alternatively, given the substantial costs ARG has already incurred and will continue to incur to defend this action and the extent to which the Court's order is in the minority in light of other precedent, the Court should stay the proceedings in this matter pending decision in an identical lawsuit filed by Plaintiff AsIs by the Ninth Circuit on the *threshold* question of whether Plaintiffs even have a right to bring this lawsuit, and another decision on the meaning of "adverse effect" also pending appeal in the Ninth Circuit. Finally, should the Court decline either avenue, it should require Plaintiffs to post a bond that would adequately cover ARG's costs and attorneys' fees, which ARG intends to seek. As demonstrated by proceedings in a sister court, ARG is likely to face upwards of $1 million in attorneys' fees, much of it spent on discovery. Plaintiff AsIs has several other CAN-SPAM cases pending, despite the overwhelming authority against its legal position. It has admitted it is so financially unstable that it could not afford a bond.

## II.   ISSUE TO BE DECIDED

(1) Whether this Court should certify its July 30, 2008 Order denying ARG's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) Or Fed. R. Civ. P. 12(b)(6) to the Ninth Circuit Court of Appeals pursuant to 28 U.S.C. § 1292(b), given that the Court explicitly disagreed with the weight of authority on the meaning of "adverse effect" under the CAN-SPAM Act 2003, and in doing so created a split of authority in this District, and that an order from the Ninth Circuit could speedily end the litigation.

(2) Whether, in the alternative, the Court should stay the proceedings pending decisions in *AsIs Internet Servs. v. Optin Global et al.*, 3:05-cv-05124-JCS, Dkt. 395 (April 18, 2008), and *Gordon v. Virtumundo*, 2007 WL 1459395, at *8 (W.D. Wash. May 15, 2007).

(3) Whether, in the alternative, the Court should require Plaintiffs to post a bond to cover the costs and fees ARG has and will incur in defending this litigation, given the overwhelming authority against the Court's ruling and Plaintiffs' admitted financial difficulties.

## III.   RELEVANT FACTS

On December 7, 2007, Plaintiffs filed their Complaint, alleging ARG had violated the CAN-SPAM Act of 2003 by sending them emails with allegedly false and misleading header information, many of whose subject lines were allegedly misleading. On June 16, 2008, ARG

Page 3

Defendant's Motion For Certification Under 28 U.S.C. § 1292(b), a Stay, Or a Security

264782.1

filed a motion to dismiss, contending Plaintiffs lacked standing because they had not adequately alleged they were adversely affected by receipt of the emails. *See* 15 U.S.C. § 7706(f)(1). Relying on three cases interpreting the term "adversely affected," including two in this District, one of which involved AsIs, ARG contended Plaintiffs needed to show a significant harm directly caused by the emails at issue. Plaintiffs admitted they could not show any adverse effect directly resulting from the emails at issue, and argued that courts that had previously interpreted the provision had done so incorrectly. In its July 30, 2008 Order, the Court denied ARG's motion to dismiss pursuant to the analysis described in Section I above. AsIs has pending before the Ninth Circuit an appeal of the sister court's decision dismissing its claims on standing grounds. *AsIs Internet Servs. v. Optin Global et al.*, 3:05-cv-05124-JCS, Dkt. 395 (April 18, 2008).

Plaintiffs have not been deterred by the overwhelming authority against their position. AsIs has several CAN-SPAM cases pending. AsIs has admitted in prior litigation that it cannot afford to post a bond. *Id.*, Dkt 33 (May 27, 2008). In addition, AsIs faces a motion for sanctions for nearly $1 million. *Id.*, Dkt. 412 (May 13, 2008). It allegedly forced a defendant in that case to incur more than $1 million in costs and fees. *Id.*, C-05-5124 JCS, Dkt. 412 at 2.

### IV.   ARGUMENT

**A.   This Court Should Certify Its July 30, 2008 Order To the Ninth Circuit Court of Appeals Under 28 U.S.C. § 1292(b).**

Pursuant to 28 U.S.C. § 1292(b),

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b); *see also Pence v. Andrus,* 586 F.2d 733, 735 (9th Cir. 1978) (reviewing certified order on standing grounds); *TOPIC v. Circle Realty,* 532 F.2d 1273, 1274 n. 1 (9th Cir.

Page 4

Defendant's Motion For Certification Under 28 U.S.C. § 1292(b), a Stay, Or a Security

264782.1

1976) (same). Thus, to properly certify a question under the statute, three circumstances must exist.[2] First, there must be a controlling question of law. Second, there must be "substantial ground for difference of opinion" as to the controlling question of law. Finally, immediate appeal from the order must possibly "materially advance the ultimate termination of the litigation." The Court may stay the proceedings during the pendency of the appeal.

### 1. Whether Plaintiffs Were "Adversely Affected" Within the Meaning of the CAN-SPAM Act of 2003 Presents A Controlling Question of Law.

The legal question the Court decided—whether Plaintiffs had suffered the requisite adverse effect to have standing to bring their claims—is a controlling question of law under 28 U.S.C. § 1292(b). A question is "controlling" under the statute where "resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982) (declining to find refusal to recuse as controlling question); *cf Kuehner v. Dickinson & Co.*, 84 F.3d 316 (9th Cir. 1996) (finding order requiring arbitration presented controlling question of law). Here, if the Ninth Circuit were to reverse the Court's July 30, 2008 Order, it would end the litigation entirely.[3] Thus, the decision could "materially" affect the outcome of this case by ending it.

### 2. The Split of Authority Within This District Shows There Is Substantial Ground For Difference Of Opinion As To The Meaning of "Adverse Effect."

Federal appellate courts generally exercise their discretion to hear an appeal where a split of authority shows there is a substantial ground for difference of opinion. *See, e.g, Muniz v. Sabol*, 517 F.3d 29, 32 (1st Cir. 2008) (split in district courts); *Fasano v. Fed. Reserve Bank of*

---

[2] A prerequisite, that the Order not be "otherwise appealable," is clearly met here. The July 30, 2008 Order is not a final judgment under 28 U.S.C. § 1291, nor an order granting or refusing an injunction, appointing a receiver, or determining the rights of parties in an admiralty case under 28 U.S.C. § 1292(a).

[3] If the Ninth Circuit were to dismiss the CAN-SPAM claim, Plaintiffs do not dispute this Court should decline to exercise supplemental jurisdiction over the state-law claim since it would have "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). Nor do they dispute that the claim would likely be preempted. *See* 15 U.S.C. § 7707(b); *see also OptIn Global*, 2008 WL 1902217, at *17 ("to the extent a state law permitted the imposition of liability on such a basis it would not fall within the savings clause of the CAN-SPAM Act").

DAVIS WRIGHT TREMAINE LLP

*New* York, 457 F.3d 274, 279 (3rd Cir. 2006) (split in courts around the country and another court in the circuit); *McAbee v. City of Fort Payne,* 318 F.3d 1248, 1251 (11th Cir. 2003) (circuit split); *Grant v. Chevron Phillips Chem. Co.,* 309 F.3d 864, 867-68 (5th Cir. 2002) (intra-district court split). At least one court has adopted a requirement that the issue be one of first impression, one where district courts within a circuit disagree, or one where circuits disagree. *See Gaylord Entertain. Co. v. Gilmore Entertain. Group*, 187 F. Supp.2d 926, 956 (M.D. Tenn. 2001). Significantly, here, two of these requirements are met: this is an issue of first impression in the Ninth Circuit, and an intra-district court split exists.

Certification is appropriate for the same reasons the federal district court for the District of Oregon cited in granting certification in a different context:

> [T]hese issues… have been subject to considerable debate but have no clear resolution in this circuit…. [W]ith this judgment, there is a split of authority on the… question among the district courts within the Ninth Circuit. Immediate appeal of this order may materially advance the termination of this litigation because the parties are likely to appeal this case in any event and guidance from the Ninth Circuit now will greatly help to focus and limit the plethora of legal issues and factual arguments that the parties will otherwise have to advance….

*Umatilla WaterQuality Protective Ass'n, Inc. v. Smith Frozen Foods, Inc.*, 962 F. Supp. 1312, 1323 (D. Or. 1997); *see also see also Muniz v. Winn*, 462 F. Supp.2d 175, 183 (D. Mass. 2006)*, rev'd on other grounds*, 517 F.3d 29 (1st Cir. 2008).

As in *Muniz*, the issue here "cries out for authoritative, prompt, precedential resolution in the [] Circuit. The judges in this District are divided." 462 F. Supp.2d at 183. The Court has departed substantially from three prior decisions, and its order is inconsistent with a fourth decision. Prior decisions, recognizing the limited nature of the CAN-SPAM private claim, have required a link between the emails at issue in the litigation and the harm Plaintiffs have suffered. *See Gordon v. Virtumundo*, 2007 WL 1459395, at *8 (W.D. Wash. May 15, 2007) (IAS provider had not alleged emails at issue had caused requisite injuries such as limited internet connectivity, compromised network integrity, or higher overhead costs and staffing); *see also Ferguson v. Quinstreet, Inc.*, 3:07-civ-05378-RJB (W.D. Wash Aug. 5, 2008) (dismissing claim for lack of adverse effect); *Brosnan v. Alki Mortgage, LLC*, 2008 WL 413732, at *2-*3 (N.D. Cal. Feb. 13,

DAVIS WRIGHT TREMAINE LLP

2008) (dismissing claim *sua sponte* where plaintiff "fail[ed] to state the actual harms suffered by his company as a result of the alleged spam sent by Defendant"); *AsIs Internet Servs. v. Optin Global, Inc.*, 2008 WL 1902217, at *17 (N.D. Cal. Apr. 29, 2008).

A sister court, dismissing a spam claim for lack of adverse effect *sua sponte*, noted:

> [A]ctual damages must be established before the plaintiff is permitted to seek statutory damages…. *[T]he plaintiff must have suffered actual adverse effects **as a result of Defendant's actions**, not merely pray for monetary damages to be established at some later point*, let alone to proceed and recover statutory damages in the alternative.  Furthermore, *these adverse effects must be significant.* **The effects need to be more than the time and money spent dealing with spam.**  The effects must rise to a *significant* level of harm unique to an IAS.  These harms include *substantial* decreased bandwidth, expenditures of resources to manage the spam (hired staff, purchased equipment, increased server costs), and compromised network integrity. Plaintiff has not pleaded these, or indeed any, adverse effects *resulting from Defendant's alleged spam* and therefore has not satisfied the statutory standing requirement under the Act.

2008 WL 413732, at *2-*3 (emphases added) (citations omitted).

In another of the prior decisions, after protracted discovery, another sister court found that the *same plaintiff*, AsIs, lacked standing under the statute. *Optin Global, Inc.*, 2008 WL 1902217, at *17.  The court stated:

> [N]o reasonable jury could find, based on the undisputed evidence, that the Emails that are the subject of this action caused any significant adverse effect to ASIS. While there is some evidence that spam generally has imposed costs on ASIS over the years, there is *no* evidence that the Emails at issue in this action resulted in adverse effects to ASIS: there is *no* evidence in the record that any of the Emails either reached any active ASIS users (rather than being filtered by Postini) or were the subject of complaints to ASIS; there is *no* evidence in the record that ASIS had to increase its server capacity or experienced crashes as a result of the Emails; and there is *no* evidence in the record that ASIS experienced higher costs for filtering by Postini as a result of the Emails…. In short, ASIS suffered no meaningful adverse effect as a result of the Emails of any kind. As a result, it does not have standing to assert its claims under the CAN-SPAM Act.

*Id* (emphasis in original).

Here, by contrast, the Court found these same facts irrelevant to the standing question. Instead of requiring Plaintiffs to allege some significant harm as a result of the emails at issue, it developed an entirely different test: "[A] provider of internet access services is 'adversely

1   affected by a violation' of the CAN-SPAM Act within the meaning of § 7706(g)(1) if it has
2   suffered ISP-specific harms, such as network problems or increased costs discussed above, *and*
3   has carried the unlawful spam over its facilities." Dkt. 48 at 8 (emphasis added). This test
4   affords plaintiff IAS providers standing as satisfying the "adversely affected" standard if they
5   simply have measures in place to combat *lawful* yet unsolicited commercial email, and allege that
6   *some* emails defendants sent were unlawful–regardless whether the unlawful emails themselves
7   resulted in any adverse effect.

8         Specifically, although the Court reasoned the prior test effectively eliminated the private
9   claim, this is simply not the case. If, for example, an IAS provider suffered loss of network
10  bandwidth within a certain period, and also received comparatively large numbers of emails from
11  a particular sender during that period, it likely could establish standing under the CAN-SPAM
12  statute. Likewise, the Court appears to have presumed that all spam is unlawful, when in fact, the
13  statute primarily regulates the content of emails, and only in limited situations requires emails not
14  be sent at all. To the extent the Court's decision would allow IAS providers to simply take steps
15  to help its subscribers avoid unwanted (but lawful) emails, its ruling extends the private claim
16  well beyond the scope of the statute.

17        The Court expressly recognized its test is in the minority, stating:

> *Defendant urges the Court to follow several recent decisions construing § 7706(g)(1)*, and hold that an IAP must allege it suffered discrete economic loss directly attributable to the deceptive emails alleged in the complaint in order to be "adversely affected by a violation" of the Act. *The Court declines to do so*.

21  Dkt. 48 at 2. The Court thus applied its new "adverse effect" test to find sufficient Plaintiffs'
22  allegations that they had processed the emails over their servers, investigated them, and incurred
23  spam-related expenses generally. *Id.* Indeed, under this logic, any IAS provider over whose
24  servers "unlawful spam" crosses would have standing even from the receipt of just *one email*,
25  since most such providers suffer some *general* spam-related expenses.

26        Thus, the Court's newly announced test varies significantly from precedent, and the Court
27  acknowledged as much. The decision broadens the CAN-SPAM claim in a way ARG believes is
28  unprecedented. Three of the five decisions as to what constitutes "adverse effect" were decided

DAVIS WRIGHT TREMAINE LLP

in Northern District of California courts. The remaining decisions were decided within the Ninth Circuit's jurisdiction, in Western District of Washington courts. Thus, substantial difference of opinion exists, within the Ninth Circuit and within the Northern District of California, as to what constitutes "adverse effect" under the CAN-SPAM Act.

### 3. Immediate Appeal From The Order May Materially Advance the Ultimate Termination of the Litigation.

Finally, immediate appeal from the order may materially advance the ultimate termination of the litigation. If the Ninth Circuit finds that Plaintiffs lack standing, it would terminate the litigation. *See Harsmen v. Smith,* 542 F.2d 496, 498 (9th Cir. 1976) (reciting standard and deciding question, on appeal under Section 1292(b), of whether plaintiffs could maintain individual and representative actions). If this Court decides not to certify the question, however, the case is likely to consume significant resources in protracted discovery and litigation. Another defendant facing Plaintiff AsIs claims it incurred more than $1 million in attorneys' fees and costs, much of it in discovery. *See OptinGlobal Inc.*, C-05-5124 JCS, Dkt. 412 at 2.

Not only would a reversal by the Ninth Circuit terminate this litigation, but it would also effectively terminate the other litigation AsIs and Mr. Householter have pending in the federal courts—again saving the courts and parties significant resources. Although Section 1292(b) does not require resolution of an issue important to other cases, such a finding is a strong reason for certification. *See Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990). AsIs has already filed an appeal of the *OptIn Global* decision, meaning the Ninth Circuit will face this question inevitably. There is no reason ARG should incur substantial fees and costs until that court has ruled on this disputed question.

### B. The Court Should Stay the Proceedings If It Certifies Its Order For Immediate Appeal.

If the Court grants this motion, it should stay the proceedings. Two appeals on this question already are pending in the Ninth Circuit, and consideration of the cases together would save judicial resources. In addition, discovery in this matter already has been extremely costly, even during a time when Plaintiffs, by their own admission, did not have an operative complaint. In its opinion, the Court rejected ARG's argument that a broad standing requirement would

"untether[] real harm from damages," finding that the "primary purpose" of the Act is to "punish spammers, not compensate its victims." Dkt 48 at 9. Thus, the Court reasoned, Congress designed the Act to allow IAS providers to enforce the statute, even if they have not been significantly harmed by receipt of the emails. *See id.* at 9-10.

Given this reasoning, a stay in the proceedings would not harm Plaintiffs—indeed, as this Court's order denying the motion to dismiss notes, they are merely acting as private enforcers of the Act, whose purpose is not to compensate them, but rather to punish spammers. This is particularly salient because the parties are likely to spend most of their resources—both internal resources and attorneys' fees and costs—in discovery. In *Optin Global,* one defendant is seeking nearly $1 million in fees and costs. *See* C-05-5124 JCS, Dkt. 412 at 3. Without a stay, if the Ninth Circuit were to find the majority of courts correct, and Plaintiffs lack standing, ARG will have been significantly prejudiced. There is no reason the Court should not grant a stay if it certifies its order for immediate appeal.

Plaintiffs may argue that the short-lived nature of electronic data makes a stay inappropriate. However, Plaintiffs filed suit for some emails it received more than two years ago, and therefore admit that data from that time is still available. Moreover, both parties have issued a litigation hold, meaning they will retain any electronic data. And, as ARG has argued in the past, the emails themselves are only useful for the first several hours after their receipt to determine who sent them, and otherwise will require the same analysis later as they do now. Plaintiffs are unlikely to be able to point to any electronic data that will be lost, or for which the analysis will change in the future.

**C.    The Court Should Stay the Proceedings Even If It Declines To Certify Its Order Under 28 U.S.C. 1292(b).**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). To determine whether a stay is appropriate, the Ninth Circuit looks to "[1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being

Page 10

"Defendant's Motion For Certification Under 28 U.S.C. § 1292(b), a Stay, Or a Security

264782.1

required to go forward, [3] and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

Here, these factors favor a stay. As explained above, the possible damage from a stay is negligible, particularly since ARG has agreed to provide voluminous amounts of material information to Plaintiffs prior to the hearing of this motion. ARG is likely to face significant hardship if it is forced to go forward. If other cases in which AsIs is a plaintiff are any indication, the Court and special master are likely to face discovery disputes, summary judgment motions, and potentially a trial. Finally, allowing the Ninth Circuit to decide this issue, in the face of conflicting decisions, and as an issue of first impression, is likely to simplify the issues in this case. If the Court affirms *Optin Global* and *Gordon*, the litigation will end. Indeed, even if the Ninth Circuit reverses the cases, it will have established a standing standard appropriate not only as a threshold inquiry, but on summary judgment. Finally, ARG anticipates the Ninth Circuit will rule on other arguments ARG is likely to raise, including whether it "procured" the emails within the meaning of the CAN-SPAM Act.

**D.    If The Court Declines Certification Or a Stay, It Should Order Plaintiffs To Post a Bond For ARG's Costs And Fees.**

This Court, "[u]pon demand of any party, where authorized by law and for good cause shown" may "require any party to furnish security for costs which can be awarded against such party in an amount and on such terms as the Court deems appropriate." Local CR 65.1-1. Under the CAN-SPAM Act, the Court may also, "in its discretion, require an undertaking for the payment of the costs of such action, and assess reasonable costs, including reasonable attorney's fees, against any party." 15 U.S.C. § 7706(g)(4). Finally, "federal courts have inherent authority to require plaintiffs to post security for costs." *In re Merrill Lynch Relocation Mgmt.*, 812 F.2d 1116, 1121 (9th Cir. 1987).

Few courts have addressed the propriety of requiring a security under the CAN-SPAM Act or Local CR 65.1-1. Still, courts have

> recognized a number of relevant factors for determining whether to require a party to file a bond: (1) the financial condition and ability

> to pay of the party who would post the bond, (2) whether the party is a non-resident or foreign corporation, (3) the merits of the underlying claims, (4) the extent and scope of discovery, (5) the legal costs expected to be incurred, and (6) compliance with past court orders.

*RLS Assocs., LLC v. United Bank of Kuwait PLC,* 464 F. Supp.2d 206, 220 (S.D.N.Y. 2006) (internal quotation marks and citations omitted). "[I]nability to pay prospective costs is sufficient in and of itself to justify an order requiring the posting of a cost bond." *Id.* at 221 (citation omitted).

Here, this test clearly favors ARG. Plaintiffs have previously admitted they cannot afford to post a bond, 3:05-cv-05124-JCS, Dkt 33, and face a claim for nearly $1 million in attorneys fees in another CAN-SPAM case, *id.*, Dkt. 412. In addition, the merits of Plaintiffs' claims are in considerable doubt. Plaintiffs have appealed the *Optin Global* decision to the Ninth Circuit, and ARG should not incur any unrecoverable fees or costs while Plaintiffs' standing is in serious question. Yet if the Court declines to stay the proceedings, ARG is likely to incur substantial legal costs, in excess of several hundred thousand dollars in discovery, at summary judgment, and if necessary, at trial. These circumstances warrant ordering Plaintiffs to post a bond, to assure ARG that if the case is dismissed, it has a recourse to recoup its costs and fees. To decline both a stay (accompanying certification) and a bond would thus put ARG in an impossible position—it would be forced to incur hundreds of thousands of dollars on litigation that may well be dismissed or moot after a Ninth Circuit decision on the standing question.

## V.   CONCLUSION

For the foregoing reasons, ARG respectfully requests this Court certify its July 30, 2008 Order to the Ninth Circuit Court of Appeals for an immediate appeal under 28 U.S.C. § 1292(b), stay the proceedings pending the Ninth Circuit's two decisions, or in the alternative, require Plaintiffs to post a bond.

//
//
//
//

| | | |
|---|---|---|
| 1 | DATED: August 18, 2008 | Respectfully submitted, |
| 2 | | DAVIS WRIGHT TREMAINE LLP |
| 3 | | |
| 4 | | By: */s/ Thomas R. Burke*_____ |
| | | THOMAS R. BURKE |
| 5 | | RONALD LONDON (admitted *pro hac vice*) |
| 6 | | AMBIKA K. DORAN (admitted *pro hac vice*) |
| 7 | | Attorneys for Defendant ACTIVE RESPONSE GROUP, INC. |

DAVIS WRIGHT TREMAINE LLP

Page 13

Defendant's Motion For Certification Under 28 U.S.C. § 1292(b), a Stay, Or a Security

264782.1